Samsung Electronics Co., Ltd. I think we're ready. Please proceed. Good morning, again, Your Honors. There are four issues I would like to touch. There's a lot in the briefing, but I'm going to try to get through some of the key issues as we go. These issues are the means plus function language or element in Claim 14, the construction of streaming, the issue related to priority, and then finally, the lack of analysis related to two claims on two grounds. For the means plus function element found in Claim 14, it was error for the board to make its determination that this claim was invalid. First, the CFRs, 37 CFR 42.104, sub B, sub 3, required petitioners in the petition to provide the construction for this means plus function claim element. They did not. So the petition should have been denied at the outset for their failure to comply with the requirements. Then the board compounded this error by once this issue was raised, the petitioners, for the first time in their reply brief, raised the issue that either this was not means plus function, which was an argument rightfully rejected because the limitation is means for recharging the internal battery. There's a quintessential means plus function limitation, or a construction under means plus function where it was, what it is, and then how that was found allegedly in the references. And what the board acknowledged in its opinion on page 50, that this was new argument raised for the first time in the reply brief. The regulations- Why do I think that somewhere maybe Red Brief cited that there was an oral reply or an opportunity for you to have an oral reply and you were asked that and you had no response? I may be confusing it with another case, but I think that's what somebody said happened here. Am I misleading it? No, you are correct. That's a mischaracterization of the record, Your Honor. We had asked for a reply, a surreply on this issue. What the board said we got to do was file a five-page brief identifying the new arguments, and that was it. And then they got to respond. And then we got a surreply on the priority issue because the board agreed we bore the burden of proving priorities, so we got the last word on that issue. But we did not get a surreply as we had requested. Yeah, but am I wrong? I mean, typically, whether they provide a construction or not, the board is free to come up with its own construction, notwithstanding whatever the petitioner says, right? That may be, but in this case- Isn't that right? But they're not allowed then to make the determination and the analysis that the petitioner should have done as to where that under that construction is found in the record. They stepped into the shoes of the petitioner- I'm sorry, but when you say they, are you talking about the board? Yes, the board stepped in the shoes of the petitioner and said, we're going to do your homework for you. We're going to offer construction, and then we're going to do the analysis of where the references allegedly disclose that construction. That was improper. That was an abuse of discretion. Well, I thought you just told me, though, that they are free to come up with a new and different construction on their own. They are- And when they do that, by necessity, they need to explain where the construction came from? Totally fine for them to come up with where the construction came from. What they can't do is the second step, is then saying, okay, we now have this construction. Here in the references is where it was found. That is what they cannot do without argument being presented by either side. That did not occur here. And that was a fundamental error. And because, again, the reply brief should have been stricken. The office patent trial guide- So I understand your argument that Samsung didn't do what it was obligated to do at the outset. But part of what I'm struggling with is the board seemed to have virtually adopted your proposed construction, and the structures it pointed to are the very structures you pointed to in your patent owner response. So while Samsung had an obligation, no doubt about it, nonetheless, what the board did- You're saying the board stepped into the shoes of Samsung, looked in the prior art, and came up with the structures. But I thought it adopted the ones you suggested. We did not offer a construction. It wasn't our burden. We didn't offer construction. They bear the burden of proof. We didn't offer construction. We said they failed to comply with the regulations, and therefore it should be dismissed. The board went on its own and curated its own construction based on no argument. It rejected petitioners and then made its own argument. We did not offer one. And so because of that, the reply brief in its entirety should have been struck. It was an abuse of discretion to not implement their very regulations, which is found in Appendix 5949. Any new argument in a reply brief, then the entire reply and support exhibits is stricken from the record. That's what should have happened, and without that, there was no evidence to go forward on this claim, and we would ask that this court reverse. What is the standard of review that I need to review this sort of procedural decision to move forward in the absence of Samsung having done everything perfectly? What is the standard of review I use to evaluate whether the board was permitted to do that? So I guess I'm a little unclear whether they're permitted or not. The guide, the regulations are what the regulations are. But you're challenging here their denial of your motion to strike. Am I right about that? Correct. And what is the standard of review? So I believe it's abuse of discretion. I think even under that deferential standard, they fail there. They admit in the brief, in their final decision, they admit this was new argument. Once they've done that, the regulation is clear. Strike the entire reply. There's no discretion available for them to only pull out parts or not parts. In fact, the regulation says don't do that. We don't want you getting the exercise because we want incentive on petitioners to not put in new arguments. Is your entire argument this what I would call a procedural argument? Or did you make any argument that it would not have been obvious to replace a regular battery with a rechargeable battery in the prior arc, which is the heart of the merits? Did you make any arguments about why it would not have been obvious to do that? We did not because we didn't get the opportunity to do that. I want to quickly then move into streaming and the claim construction there, which is the no review standard. The board here highlights the numerous fundamental principles of claim construction law. They start with an extrinsic evidence and then work their way back. There's no case. Can I just ask you a technicality on that question? The invalidity, I think, in that case was based on references that predate the 2008-12 reference, right? So I'm just wondering, as a procedural matter, do we even have to reach that question about the 8-12 and what the priority date is, given that the references relied on were earlier? There are three combinations, Your Honor, that were issued. Two of the combinations all have predating references. There is one combination, the Amora combination, that has references that post-date 2000. So the priority issue still needs to be decided because— But alternative, one of three alternatives. Correct. Why, if we agree with the other alternatives? I mean, if we agree with—you're suggesting that we would say the other two alternatives are wrong and we would necessarily have to agree to Amora. Right. And that's a possibility, but not necessarily right. I mean, if we agreed with the board—if we adopted the board's invalidity arguments and conclusions with respect to the—there are prior references, a combination of which would have predated the 2000. Correct. So it may be possible not to reach this issue, but because of its implication in other continuing applications and whatnot, I believe this court should address the issue for a lot of reasons that the PTO addressed of the inconsistencies here. But just focusing really quickly on the streaming issue, the intrinsic record is clear that streaming—let me step back just a second. The issue on streaming is whether or not language of immediately available for playback or processing should be included in the construction. That's the crux of the issue. The specification is clear that when it's talking about streaming, the mechanism of streaming, that has to—that's what streaming is. Now, the board actually acknowledges that. It says, yes, parts of your specification do suggest that. They only—they go to hinge on one part of the specification, which petitioners raised in their issue at column 8, line 31 through 35, to say, well, that's a little confusing, thus we're going to not adopt that portion of the construction. But that section in column 8, lines 31 through 35, actually provides no confusion. What that's describing, Your Honors, is types of information that can be transmitted, and it provides a list of things, one of them being streaming audio. That's one type of data that can be sent to the phone. It then goes on, actually, to read the next sentence to say these types of— Well, why don't you tell—I mean, sorry, you're talking about column 8 of the 641. Why don't you give us the line number so we can follow this? Yeah, 641. Sorry, Your Honor. And there again, there's a column 8, line 31 through 35, talks about a list of different things that can be sent. It then goes on to continue after that sentence to say these may be wirelessly communicated to an electronic device. So it's not talking about the mechanism of transmission. It's just talking about the types of data. So there's nothing confusing here. There's no statement in here where the patent owner is saying streaming equals downloading. That is not here. What is here is streaming is one mechanism that's different than downloading mechanisms. And then if we look at the file history, the patent owner, again, makes an argument to the examiner of streaming means immediately available for playback or processing. And the board and the petitioners reject that statement by the patent owner simply because the examiner disagreed with the argument based on whether there are different characteristics of the type of information. There, the patent owner was arguing streaming audio has characteristics that are different than other data to be downloaded. And that was the argument that the examiner said, no, I think the characteristics are the same or I don't see a difference. But the examiner was not saying was that the construction, that the definition of streaming or the mechanism including this immediately available for playback was wrong or incorrect. So when one looks at the file history and the whole intrinsic record, it's clear that this definition should have included immediate playback. And in fact, just moving quickly to the dictionary that they cite, first of all, no party cited this dictionary definition to the board. The board went out on its own and found it. Second, the board makes no attempt then to say that this dictionary definition was available at the time of the invention or as a dictionary that one of skill would have looked at. It just simply went to Google, searched dictionary, then searched the term, and then said, here it is. With no basis for establishing that this would truly have been a dictionary that would have been available to one of skill in the time of the invention. But then compounding the error is that definition they find says streaming includes immediately available for playback or download. And the board just strikes that section of this definition because of its alleged confusion related to call me. No basis for that. That was a legal error. And the claim construction is improper. Under the proper claim construction, none of the combinations teach this claim element. So we'd ask the court to reverse similarity on those. I want to move real quickly then to the priority issue. The board had no statutory authority to decide priority. Congress was very clear when it defined the scope of IPRs in section 311 where it said, and the petitioner in an inter-parties review may request to cancel as unpatentable one or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications. Right. No one's disputing here that they weren't deciding on grounds of validity a written description issue. That wasn't the basis. They didn't strike this down on the written description grounds. They didn't strike the claim. Correct. But they're not allowed to do analysis under 120. Congress calls out. Wait, why not? That's necessary. In order to do an analysis under 102 or 103, you have to first decide what the critical date is, the date that you have to get before. So I don't understand how they can't do analysis under 120. Patent on its base claims a priority date. Yep. Are they just supposed to accept that priority date? Correct, Your Honor. Just as it is to accept that there's patent eligible subject matter, that it's written description, that there's enablement, all those other parts. Priority date isn't 112. It isn't outside the scope of a 102 or 103 analysis. Priority analysis is 112 analysis. It says right in the statute, priority is established based on 112 paragraph one written description. It is a 112 analysis. Nobody disputes that it's a 112 analysis. It was a necessary predicate to decide the 102 issue, which is expressly what they were told to do. But Congress does not say. Didn't we answer this question in NTP already? I remember being on a panel that answered this question. Yes, Your Honor. Let me address two points real quick. Congress calls out certain sections here. If Congress wanted 120 to be involved in the analysis, Congress would have said it. This court cannot expand the scope of the expressed statute. They didn't say that in NTP. There was no reference to section 120, and yet, nonetheless, we held that they could do it. Right. And, Your Honor, the reasons why I don't believe NREA and NTP apply here is first look at the statutory framework for re-exam. Section 303 says the director will determine whether a substantial new question of patentability affecting any claim or of a patent concern is raised by the request. Very broad language. There is no specific call out to certain sections of Title 35. There's not use of the words or terms like only. And you have to give meaning to the words that Congress used. And so to say that even just based on the plain language of statute, they're a different framework. But even looking back, as Your Honor correctly pointed, you were on the NREA and NTP case. And in that case, one of the fundamental bases for that decision was that re-examination was supposed to be like original prosecution. That's not the case here with IPRs. The patent office has steadfastly said time and time again, IPR is not examination. It's not original examination. It's not re-examination. Re-examination and original prosecution were said to be similar. Thus, it made sense for 120 to be dropped in. In addition, the statutory language was much more permissive, whereas here for IPRs, Congress has specifically stated it's only 102 or 103 and does not call out. It would make no sense to do what you're suggesting. What Congress has been really clear about is IPRs are supposed to be a substitute venue for district court litigation. So in what universe would it make sense to say we want the PTO to decide all 102 or 103 issues but with one eye covered? You can only decide them based on the priority date. The patent asserts you can't actually evaluate whether they're entitled to that priority date even though it's part of the 102, 103 analysis. And then here's the kicker. You're going to claim that there's a stop from raising this in a district court litigation afterwards. It's absurd. It's absurd. Anything that was decided or could have been decided raised or could have been raised. So according to that logic, they would not really even be probably able to raise this in district court litigation. It makes no sense. IPRs were supposed to be a substitute for district court litigation. On these discrete issues, PTO wouldn't handicap those issues. I mean Congress wouldn't handicap those issues. It doesn't make sense because then you're going to have to either have repeat litigation or worse yet, you're going to stop them. Well, Your Honor, I would believe under Shaw Industries that estoppel would not apply to 120. Because since 120 was not an issue that could have been raised during the IPR proceeding, there would be no estoppel. The estoppel in IPRs, this court has said, is much more narrow. Only the issues that you could have actually raised after institution. And so under this analysis, the 120 analysis would not have been done. Thus, there would be no estoppel that would have applied. And again, had Congress wanted to include 120, they would have said it. They wouldn't have said only 102 and 103. Congress was, well, where are 120? They could have put it in. They did not. This court cannot read in parts of this into the statute, things that are not there. Okay. Thank you. I will restore two minutes of refund. Thank you, Your Honor. You may please the court. I'd like to start with the means plus function analysis and to lay out a little bit more clearly what happened in the petition. There are three claims of the 641 patent that relate to a rechargeable battery and an interface, a physical interface with a path both to transfer data and to conduct power to recharge the battery. The first is Claim 1. Then it's repeated again in Claim 9. By the time you get to Claim 14, it just says rechargeable battery and a means to recharge, means for recharging. In the petition, we laid out in detail where the prior art disclosed this rechargeable battery in Claim 1D, as well as the physical interface and the conductive path for data and power supply to recharge the battery. In Claim 9, we referred back to that discussion of Claim 1D and E. And in Claim 14, again, referred back to Claim 1 and the discussion of the rechargeable battery and the physical interface and the path to conduct data and power to recharge the battery. When the patent owner filed their initial response, they didn't contest that we had adequately described the means for recharging Claim 14. This was not raised. In one of the three institution decisions, the panel specifically called out that neither party had offered a construction of the means plus function claim. But the patent owner did in their priority analysis because they had to point to what in the specification provided written description for the means for recharging. And when they did that, they pointed, Judge Moore, as your question indicated, to precisely the same structure that the board ultimately relied on as providing the physical interface and functionality of the means plus function claim. That's the same structure in the specification, by the way, to which the petition had pointed in its more general sort of analysis of where in the specification each of these various limitations in the various claims was to be found. So there was no hiding the ball. There was no question about whether the patent owner was put on notice that we were asserting that a rechargeable battery and physical interface and paths to recharge the battery and transfer data at the same time were present. There was a statement in the petition specifically with respect to 1E that said specifically it was well known to a person of ordinary skill in the art to use a physical interface to communicate data and receive a recharging power in a portable device. That's the precise structure and interpretation that the board gave to the means plus function claim. And we had shown where it was in the prior art already in the petition. And the board addressed, to the extent that that was disputed, it was actually disputed only with respect to whether a USB could actually charge a phone back at that time. The board said yes with respect to Claim 1. And then when it gets to Claim 14, it then says the USB was known in the art, and it would have been known to use it to recharge a battery. So this is not a question of the patent owner not having an adequate notice of the construction or of the evidence in the prior art that disclosed that. And with respect to the reply brief, what the board said was that to the extent that in the reply for the first time that Samsung had offered an alternative that you really didn't need to construe Claim 14. You just say that it's a recharger. It's something you could buy off the shelf. They said, well, that argument should have been in the petition. We're not going to consider it. And so when they ruled on the motion to strike, they said, that's moot, because we're not adopting that construction. And so again, there's nothing here, certainly not an abuse of discretion. Can you tell me where the board adjudicated Claim 10, and in particular, where it addressed the additional limitation added by Claim 10 that the portable electronic device must be configured to accept an upgrade for the software application? Your Honor, as we said in our brief, Claim 10 is not disputed. In the newvasive case. What do you mean, Claim 10 was not disputed? Well, in this sense. In the patent owner response, the patent owner made. If it wasn't disputed, the board sure as heck shouldn't have amended it on patentable, should it? No, it wasn't disputed in this sense. Let me be more specific. At Appendix 597, this is the patent owner response. With respect to Claim 10, the patent owner says, Claim 8 is patentable over the proposed combinations such that Claims 9, 10, and 14 are patentable as well. In other words, all of those claims, Claims 9, 10, 14, they survive because Claim 8 survives. Those are the dependent claims of independent Claim 8. Then they go on to say, nevertheless, these claims are patentable for the separate reasons identified below. But below, they only offer independent reasons for upholding Claims 9 and 14. I'm confused. Claim 10 has one limitation that it adds to Claim 9, which is dependent on Claim 8. One limitation, it has to be configured to accept an upgrade. That's the only limitation it has. It has nothing else. Are you telling me the board is free to render a conclusory opinion that says Claim 10 has been proven by a preponderance of the evidence to be obvious, full stop, with no analysis of Claim 10 contained anywhere in the opinion? I know it's oversight. I know they just dropped the ball, screwed up, and forgot to address Claim 10. And I have almost no doubt that on remand you're going to prevail on Claim 10, but I don't see how I can accept under the APA, given all of the decisions we've rendered in the last year, saying a board has an obligation as an APA authority to articulate reasons and bases. I don't see how I can accept this. I know you want me to, and I know likely we're going to end up in the same place at the end of the day, but tell me how that jives with me. The cases to which you refer are all instances in which the issue that the board did not address was an issue on which the parties were disputing before the board. The board, like any adjudicatory body, relies on the parties to frame the issues that they're supposed to resolve. How tough is it? Claim 10 has one element. I mean, I don't understand. They didn't admit somewhere, did they? I saw no admission where they say, ah, this element is, in fact, present in the prior art. We're not disputing it. Well, I think that they come close to that. But if I could just, again, quote the language from Nuvasiv, that although the board did not make findings, so there as well, the board did not make findings as to whether any of the other claim limitations are disclosed in the prior art. It did not have to. Nuvasiv did not present arguments about those limitations to the board. That's at slip up 14. So I think what Nuvasiv stands for is that unlike those other instances where the parties are genuinely disputing something, where there is no dispute about something in terms of how the parties have framed the issues, the board doesn't have to make explicit findings about that. And so with respect to Claim 10, again, I go back to where the patent owner addressed it. What they said, in effect, is Claim 10 rises or falls with Claim 8 because there really was no ground to dispute whether Claim 10's additional limitation was satisfied. Now, they also— Did you argue to the Patent Office where upgrade limitation of Claim 10 appears in the prior art? We did. And what we talked about was we pointed to the places in the prior art that showed the download of software to the portable electronic device. And so your view is that people who download it are able to upgrade. Exactly. And we didn't just leave it to the board to conclude that. Our expert said that, that when you download the software, you would download the upgraded version of the software. So you didn't actually say any of the references expressly disclosed upgrading. You say they expressly disclosed something indicating they have the complete capacity to do the upgrade. They would download the software, and then the expert's testimony was that a person of ordinary skill in the art would understand that if you can download software, you can download an upgraded version of the software. So that's how we addressed that. And not surprising, I don't think, that the patent owner didn't dispute that. In fact, the patent owner did, in their discussion of Claim 8, point to the same art that we were pointing to as and conceded that it showed downloading of the software wirelessly to the portable electronic device. And the board, in its discussion of Claim 5, I realize it's not its discussion of Claim 10, but in its discussion of Claim 5, confirms the same analysis, that the cited references disclose downloading software to a portable electronic device. And that's in Appendix 25 to 26. So there really is, and was, no dispute about this. And so it's not surprising that the board didn't make a separate finding. And under the Nuvasiv case, they didn't need to. And as Your Honor says, it would be a kind of pointless exercise to remand for them to simply say there was no dispute on that point. And Claim 13 is the same. It's at page Appendix 575 that there's the same sort of like it rises or falls with Claim 8. There are other dependent claims for which they offered separate arguments, but there was not any argument made with respect to Claim 13. And again, with respect to that issue, to the extent that it was sort of like teed up in other claims, the board made a specific finding, and this is at Appendix 37, that the selected songs are delivered from a service center to the cellular phone and then retransmitted by the cellular phone to the vehicle-loaded acoustic equipment. So they are agreeing with our characterization of the Prior Art Reference at page 37. So again, I don't think there's any need for the court to make that finding. With respect to the streaming question, I think what the board did was very carefully analyze that streaming can have kind of two parts. One focuses on the transmission of the data from point A to point B, and the second connotation kind of suggests what you do with it at the recipient device once it's been received. And the board correctly said that given that this is BRI and there would have to be some clear indication that the additional limitation was required, that they didn't find it because there are references to really both. And if you look specifically even at Claim 1, Claim 1 says, utilize the wireless communication module to, quote, stream a signal representing at least a portion of a song to the recipient device over a given asynchronous wireless channel. So the focus, again, is on the transfer of the data from A to B, not what you're going to do with it once it's received. And although the patent owner faults the board for talking about the dictionary definition, when they talk about the dictionary definition, they clearly are using it only to confirm what they find in the 641 specification itself. And they say that the dictionary definition also says that the especially to mean playback, that that's an additional limitation. That's not essential. And so they found it in the ordinary meaning. They found it in the specification history. Of course, they also pointed out that in the prosecution history of a grandparent patent, the examiner had specifically rejected this argument by the patent owner and said, it's just not there. You're trying to add an additional limitation. With respect to the priority issue, I think NTP forecloses the argument that it was inappropriate to engage in a Section 120 analysis to determine whether the referenced art was, indeed, prior art or not. And so I don't think we need to discuss that further. With respect to the issue, as it was discussed in the prior argument about the 926 boards issue, of course, that would not be binding on Samsung. But we do point out in the brief that in that case, the board had been pointed to the claims of the 947 patent as they were issued, ultimately. That's not the specification as it was initially filed in the 812 specification. And this is at Appendix 55, 56 to 57. And there's a citation to column 19, lines 39 to 42 and 45 to 50. There are no columns in the 812 application. They're referring to the 947 patent as issued and specifically to claims in that patent, which were not part of the common specification of this continuation. So the board there just got it wrong. And to the extent that written description and what did a party have possession of that at the time, that is a question of fact. Different finders of fact can come to different conclusions on the basis of different records. And I think that anomaly explains the different conclusions. If there are no further questions, thank you. Thank you, Your Honor, for providing a short rebuttal. I'm just going to hit points real quick. On the 926, that is a completely misleading argument. The portions that were presented to the examiner were not limited to only the claims that had issued from the patent. There were four or five citations to the specification in addition to that, which the examiner relied on to then find that the claims were entitled to the priority date. So that is just a complete mischaracterization of the record on the 926 patent. Do you have a response to your friend's arguments with respect to Claim 10? As to Claim 10, I think the APA requires the board to have written and articulated the reasons why it found that the Claim 10 was invalid. Regardless of whether we raised an issue or not, the board is required to articulate those reasons so this court, as a reviewing court, can understand the basis for reaching it. Is there a difference between them just cutting and pasting the portions of the petitioner's briefing or saying, we agree with the petitioner? I think they have to lay out how they reach their conclusion. Whether it's saying, yes, it's found in the references and that happens to mirror what was in the petition, that may be an option. But they've got to give this court something to look at. But my question is, why isn't that sufficient? If the petitioner says, this is obvious and there was motivation for these reasons and these are the pieces of prior art you rely on for the combination, and they lay it all out in detail. And then the board simply concludes, we agree with all of the arguments made by the petitioner. If they had said, and we incorporate those arguments by reference in our decision, is that sufficient? I'm not sure that that would be sufficient for this court to then review whether or not the board had articulated the reasons. Because there likely would have been some dispute amongst the parties as to the motivation or the references or something, and they would have to resolve that conflict. Well, was there a conflict here? Your friend pointed out that there wasn't a conflict here with respect to at least the additional limitation that Judge Moore pointed to. We definitely didn't concede that Claim 10 was obvious. But you do concede when you don't dispute it. You do concede that the limitation, if they say, upgrade is present in the Habakus' reference, and you don't dispute that, haven't you conceded that it's present there? No, I don't think so. Because we have a page limit that we had to deal with. We had a lot of issues. And so we had to pick and choose which issues we had. But we didn't, just simply by not saying, for articulated reasons. You didn't dispute a statement of fact that they made. But even if there was a case, I still think they have, the board has to do something more than just say Claim 10 is obvious, which is what they did here, and they have to do more. For the reasons stated in Petitioner's brief at page 6 and 7, which are incorporated by reference into this opinion, that's not sufficient? But they didn't do that even here. No, I didn't ask you whether they did that here. I asked you whether that was sufficient. I thought you had told me two minutes ago that it wasn't sufficient. It's hard to—I don't know, Your Honor. Perhaps it may have been. Right now, the issue here is they did nothing. And I just may real quickly here— I'm misremembering this. I thought they did say, for the reasons outlined by the petitioner. No? Yes? I'm sorry, which page? I'm not— Yeah, that's all they say. We find the petitioner demonstrated a preponderance of the evidence. Right. And they have to do something more than that. That's not articulating how the petitioner has done it. That's simply an inclusion that they had done it. I do want to just real quickly—I know I'm way over my time, and I appreciate that Your Honor has just indulged me. On the means plus function, I misspoke. It's page 28 or appendix 28. And the board says, We agree with Pat Norton that petitioner's identification of the corresponding structure and its argument that 112.6 does not apply to the term means for recharging the internal battery should have been in the petition and not presented for the first time in the reply. There was no assumption, as counsel had stated. They found it was a new argument. The whole reply brief should have been out right then and there. It was abuse of discretion not to strike it at that point. And lastly, on streaming, claim one. Claim one, which counsel didn't exactly highlight to the court, talks about after you've received this audio signal that you're playing the song. So it's talking about the reason for having this immediate playback or processing. Thank you. We thank both sides and the case is submitted.